

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-1994

# Securites Exchange Commission v. Graystone Nash, Inc. et al.

Precedential or Non-Precedential:

Docket 93-5288

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Securites Exchange Commission v. Graystone Nash, Inc. et al." (1994). *1994 Decisions.* Paper 33.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/33

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 93-5288 & 93-5324
_____

SECURITIES AND EXCHANGE COMMISSION,
Appellee

v.

GRAYSTONE NASH, INC.; THOMAS V. ACKERLY; RICHARD J. ADAMS;
VINCENT R. ACKERLY, JR.; DENNIS M. WILLIAMS;
ROBERT L. ROCK; and SHAWN M. CRANE,

Thomas V. Ackerly and Richard J. Adams, Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 91-04327)
_____

Submitted Pursuant To Third Circuit LAR 34.1(a)
January 27, 1994

Before:  MANSMANN, NYGAARD, and WEIS, Circuit Judges

Filed  June 1, 1994
_____

Arthur M. Schwartzstein, Esquire
Arthur M. Schwartzstein, P. C.
1730 Rhode Island Avenue, N.W., Suite 909
Washington, D.C.  20036

Marc B. Dorfman, Esquire
Freedman, Levy, Kroll & Simonds
1050 Connecticut Avenue, N.W., Suite 825
Washington, D.C.  20036

Attorneys for Richard J. Adams, Appellant

Thomas V. Ackerly, Pro Se
12 Ferncliff Terrace
Glen Ridge, NJ 07028

1

Paul Gonson, Esquire
Solicitor
Jacob H. Stillman, Esquire
Associate General Counsel
Randall W. Quinn, Esquire
Senior Litigation Counsel
Susan B. Mann, Esquire
Senior Counsel
Securities and Exchange Commission
450 Fifth Street, N.W., MS 6-6
Washington, D.C.  20549

Attorneys for Securities and Exchange Commission, Appellee

_____

OPINION OF THE COURT

_____


WEIS, Circuit Judge.

          The defendants in this civil proceeding refused to answer questions during their discovery depositions in reliance on the right against self-incrimination.  In response to a motion by plaintiff, the district court then barred defendants from offering any evidence to contest the plaintiff's motion for summary judgment.  We conclude that plaintiff failed to provide adequate support for such a broad preclusive order.  We will thus remand for further consideration of a remedial order balancing the equities of the parties.

          The Securities and Exchange Commission brought this suit against the brokerage firm, Graystone Nash, Inc., and six of its principal corporate officers, including Richard J. Adams and Thomas V. Ackerly, alleging that they had engaged in a massive securities fraud operation.  The district court granted the SEC's motion for summary judgment enjoining Adams and Ackerly from

2

further violating securities laws and directing that they disgorge $60,565,581.

Neither Adams nor Ackerly were formally represented by counsel either during discovery or in the district court proceeding. They were deposed by telephone in 1992 on the 10th and 22nd of June, respectively. The SEC's counsel questioned them about their roles, remuneration, and decision-making responsibilities at Graystone, their participation in various stock transactions, any gains received by them as the result of trading, and any compensation other than salary they had received. Both Adams and Ackerly invoked the Fifth Amendment and refused to answer questions other than those pertaining to their names, addresses, current employment, and telephone numbers.

On October 23, 1992, the SEC filed a motion for an order of preclusion against Adams and Ackerly and for the entry of summary judgment. On December 14, 1992, Adams and Ackerly filed responses and affidavits in opposition.

Ackerly complained that the SEC had refused to produce documents that he needed in order to obtain expert testimony for his defense. He also offered to testify once the parallel criminal investigation against him by the U.S. Attorney in Newark, New Jersey had been concluded.

Adams joined in Ackerly's response and, in addition, asserted that he was not an equity owner of Graystone Nash, had only received a total salary of approximately $150,000 for the years of 1986, 1987, and 1988, and that he was never a trader for the firm. He also asserted that given a day in court, he could

3

"deliver expert testimony to refute the Plaintiff's case" and challenged in specific detail various statements made in depositions that the SEC offered in support of its motion for summary judgment.

The SEC's motion was argued before the district court on January 25, 1993. Ackerly and Adams appeared without counsel. The district judge advised them that they could exercise their rights under the Fifth Amendment, but that the court had the right to fashion remedies "[s]uch as to dismiss answers or to grant the relief of a plaintiff . . . . You understand that." Ackerly responded, "Only recently, sir. . . . We understand now." Later in the proceeding, he said, "[W]e were advised by three former prosecutors that you simply don't give testimony, and we were really branded with that idea: You simply don't do it." As to the $60.5 million that the SEC alleges was paid to Graystone, Ackerly told the court that "Graystone Nash never saw the money. I certainly never saw the money."

Adams also opposed the SEC's requests and made the following comments at the hearing:

"[T]hese people [the SEC] have been given six years' worth of tax returns which clearly shows I made $50,000 a year . . . . $60 million is ludicrous. . . . I believe I can bring enough people to make [the SEC] look wrong and to realize there is no case here. I can bring expert testimony. I have friends in this business for 25 years who will

4

testify that as an operations manager, I did my duty, and that's all. . . . [A]s far as cooperation, I testified before our governing body, the [National Association of Securities Dealers], under oath, and that was submitted to the Commission, by the way. Also, it should be noted that I'm the one that furnished almost 30,000 documents to these people. So I did cooperate. . . . I didn't have a share in the company. I had no reason to do this."

Counsel for the SEC did not comment on these remarks, and the court concluded the hearing at that point.

A few months later, the court granted the SEC's motion for preclusion and for summary judgment. In discussing the request to prevent Adams and Ackerly from presenting evidence in opposition to summary judgment, the court reviewed decisional law holding that a party invoking the Fifth Amendment cannot later attempt to defend with evidence previously withheld from discovery. In general, prejudice flowing from a Fifth Amendment plea is borne by the party asserting the privilege.

Continuing along this line, the court concluded that "[a]llowing [Ackerly and Adams] to come forward at this stage, after plaintiff has deposed many witnesses and submitted its arguments and proofs, would load the scales unjustly. Thus, the Court will not permit defendants to advance exculpatory claims." The judge continued: "The affidavits of [Ackerly and Adams]

5

contain claims about their respective roles, remuneration and decision-making authority at Graystone. Because these defendants previously responded to questions about their employment and responsibilities at Graystone by asserting their fifth amendment right . . . the Court will exclude these representations from the record."

The district court did take into consideration, however, the defendants' arguments as to the appropriateness of injunctive relief on a motion for summary judgment. Nevertheless, the court permanently enjoined Ackerly and Adams from engaging in future violations of federal securities laws and ordered them to disgorge $60,565,581 plus prejudgment interest.

## I.

The privilege against self-incrimination may be raised in civil as well as in criminal proceedings and applies not only at trial, but during the discovery process as well. Unlike the rule in criminal cases, however, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). Use of the privilege in a civil case may, therefore, carry some disadvantages for the party who seeks its protection.

On the other hand, invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth. Moreover, because the privilege may be initially invoked and later waived at a time when an adverse party can no longer secure the benefits of

6

discovery, the potential for exploitation is apparent.  Thus, the complications that may arise in civil litigation may be divided into two categories -- the consequences of the privilege when properly invoked, and the effects when it is abused causing unfair prejudice to the opposing litigant.

The Supreme Court has cautioned that the Constitution limits "the imposition of any sanction which makes assertion of the Fifth Amendment privilege `costly.'"  Spevack v. Klein, 385 U.S. 511, 515 (1967) (quoting Griffin v. California, 380 U.S. 609, 614 (1965)).  As an example, Lefkowitz v. Cunningham, 431 U.S. 801, 807-09 (1977), struck down a state statute that required an officer of a political party to either waive the Fifth Amendment or forfeit his office.  The Court commented:  "We have already rejected the notion that citizens may be forced to incriminate themselves because it serves a governmental need." Id. at 808.  The threatened loss of a party office with its prestige and political influence was inherently coercive, id. at 807, and therefore, the statute forcing the officer to choose between his right to participate in political associations and the privilege against self-incrimination was unconstitutional. Id. at 808.

The Court followed a similar rationale in other cases. In Garrity v. New Jersey, 385 U.S. 493, 500 (1967), Spevack, 385 U.S. at 516, and Lefkowitz v. Turley, 414 U.S. 70, 83-85 (1973), the Court held that individuals could not be forced to waive their rights against self-incrimination by threats that their employment would be forfeited.

The Rules of Civil Procedure recognize the need for exercise of the privilege. Rule 26(b)(5) provides that claims of privilege may be made to withhold material otherwise subject to discovery. The procedural rules, therefore, provide no basis for inflicting sanctions when there is a valid invocation of the Fifth Amendment. A refusal to respond to discovery in such circumstances is proper and does not justify the imposition of penalties. Wehling v. Columbia Broadcasting Sys., 608 F.2d 1084, 1087 (5th Cir. 1979).

It may be seen, therefore, that dismissal of an action or entry of judgment as a sanction for a valid invocation of the privilege during discovery is improper. National Acceptance Co. of America v. Bathalter, 705 F.2d 924, 931-32 (7th Cir. 1983); Campbell v. Gerrans, 592 F.2d 1054, 1058 (9th Cir. 1979); see also 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2018 (1970 & Supp. 1994). In like vein, a complete bar to presenting any evidence, from any source, that would in all practical effect amount to the entry of an adverse judgment, would be an inappropriate sanction.

The limitations on sanctions, however, do not insulate a party from all adverse consequences of his plea. The principle that the invocation of the privilege may not be too "costly" does not mean that it must be "costless." In Baxter, the Supreme Court gave an indication of a detriment that would not be too "costly" when it held that it was permissible to draw "adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."

8

<u>Baxter</u>, 425 U.S. at 318. The Court pointed out that a defendant's silence in itself was insufficient to support an adverse decision, but that such silence in conjunction with other evidence against the defendant could support that result. <u>Id</u>. at 317-18; <u>see</u> <u>also</u> <u>RAD Servs., Inc. v. Aetna Casualty & Sur. Co.</u>, 808 F.2d 271, 274 (3d Cir. 1986).

An adverse party in a civil case is not prevented from presenting evidence to the factfinder to support his own position even in the absence of testimony from the party invoking the privilege. In <u>Peiffer v. Lebanon Sch. Dist.</u>, 848 F.2d 44 (3d Cir. 1988), for example, a school maintenance employee was discharged after a hearing at which he invoked the Fifth Amendment and did not testify. His choice to remain silent did not prevent the school district from acting on evidence presented by other witnesses that was adverse to the employee. <u>Id</u>. at 46. The dilemma of choosing between complete silence and presenting a defense does not fatally infect the right against compelled self-incrimination. <u>See</u> <u>Williams v. Florida</u>, 399 U.S. 78, 84 (1970).

In a civil trial, a party's invocation of the privilege may be proper, but it does not take place in a vacuum; the rights of the other litigant are entitled to consideration as well. One of the situations in which that concern comes into play arises when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege. At that stage, the adverse party -- having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter -- would be placed at a

disadvantage. The opportunity to combat the newly available testimony might no longer exist, a new investigation could be required, and orderly trial preparation could be disrupted. In such circumstances, the belated waiver of the privilege could be unfair.

Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989), refused to permit such abuse. In that case, the district judge ruled four days before trial that the defendant would be precluded from testifying because he had earlier refused to answer questions during discovery. The Court of Appeals determined that "[a] defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." Id. at 577. For similar reasons, the Courts of Appeals in In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991) and United States v. Parcels of Land, 903 F.2d 36, 43 (1st Cir. 1990), sustained district court orders striking affidavits opposing summary judgment after parties had refused to answer questions at depositions.

Traficant v. Commissioner, 884 F.2d 258, 265 (6th Cir. 1989), upheld the trial court's order barring the defendant from introducing evidence on the authenticity of his own statement and of tape recordings because he had invoked the Fifth Amendment and had refused to respond to discovery on those points. The Court of Appeals held, however, that the trial court was incorrect in preventing the defendant from exploring the contents and significance of that evidence. Id.

10

A trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.

The necessary accommodation took place in FTC v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1291 (D. Minn. 1985), where the trial judge admitted the testimony of the defendant even though he had previously invoked the Fifth Amendment during discovery. The court decided that a complete ban on defense testimony was not justified because the plaintiff Federal Trade Commission had received some information from the defendant about specific areas of inquiry. Hence, the Commission had not been unfairly surprised nor prejudiced by the defendant's last-minute waiver. The agency had been able to thoroughly prepare its case and was not solely dependent on the defendant for pertinent information. Id.

In Young Sik Woo v. Glantz, 99 F.R.D. 651 (D.R.I. 1983), the plaintiff moved for summary judgment after the defendant had invoked the Fifth Amendment. The trial court observed that "no showing has been made sufficient to identify the specific facts which the defendant asserts are contested, or to show that third-party depositions or affidavits are, given good faith efforts, unavailable to oppose the motion." Id. at 653. The court observed that the defendant may be able "to . . . rebut his opponent's case without his own testimony." Id.

11

(internal quotation omitted).  In the exercise of caution, the court therefore declined to enter judgment in favor of the plaintiff, but instead gave the defendant an opportunity to conduct further discovery in order to secure evidence to oppose any renewed motion for summary judgment that might later be brought.  Id. at 653-54.

In contrast to those two cases and others using a similar approach are such decisions as SEC v. Cymaticolor Corp., 106 F.R.D. 545 (S.D.N.Y. 1985) and SEC v. Benson, 657 F. Supp. 1122 (S.D.N.Y. 1987).  In Cymaticolor, the plaintiff SEC sought an order precluding the defendant from offering into evidence any matter relating to the factual bases for his denials and defenses as to which he asserted his Fifth Amendment rights.  Cymaticolor, 106 F.R.D. at 549.  Rejecting the defendant's contention that preclusion should be limited to evidence that the SEC had not received from other sources, the court issued an order in the terms the plaintiff had requested.  Id. at 549-50.

We do not find the Cymaticolor approach satisfactory because the court there did not perform the careful evaluation used in Kitco.  Benson also seemingly imposed a total preclusion, although that is not clear from the opinion.  See Benson, 657 F. Supp. at 1129.  In any event, the defendant's obstructionary conduct throughout the litigation might have had a bearing on the court's ultimate choice of remedies.

## II.

This brief survey of caselaw makes it apparent that the effects that an invocation of the privilege against self-

12

incrimination will have in a civil suit depends to a large extent on the circumstances of the particular litigation.' The issue has been complicated somewhat in this case by the fact that defendants represented themselves in the district court, although they had apparently received off-hand advice from lawyers at some point. The decision to invoke or waive the Fifth Amendment is not always self-evident, and it requires serious consideration of the consequences. Counselling by a lawyer familiar with the ramifications of a particular case and the intricacies of the law in this area is highly desirable, but here defendants proceeded without the benefit of such carefully considered advice.

The record raises serious questions about whether defendants waived their privilege by filing affidavits addressed to some of the same matters that they had refused to discuss at their depositions. Some statements made by Ackerly and Adams at the hearing on the SEC's motion, moreover, indicate that defendants might have shifted their positions and had instead decided to waive the privilege.

Another area of inquiry that was not explored at the hearing was the effect of Adams' sworn statement to the National Association of Securities Dealers that the SEC had obtained.

---

'Not surprisingly, this topic has generated interesting academic commentary. See, e.g., Frances S. Fendler, Waive the Fifth or Lose the Case: Total Preclusion Orders and the Civil Defendant's Dilemma, 39 Syracuse L. Rev. 1161 (1988); Elkan Abramowitz & Jed S. Rakoff, The Fifth Amendment Privilege in Civil Litigation: Assertion, Waiver, and Consequences, in Crim. L. & Urb. Probs: White Collar Crim. Prac. 1985 (PLI Litig. & Admin. Practice Course Handbook Series No. C4-4169, 1985); Robert Heidt, The Conjurer's Circle -- The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062 (1982).

Whether that material constituted a waiver or whether it was a factor counselling a limitation on the SEC's request for total preclusion was not discussed. The thousands of documents that Adams asserted he had turned over to the SEC might also have had some relevance in determining the appropriate scope of preclusion, assuming that to be a proper remedy in the circumstances.

There is a lack of support in the record for the SEC's contention that it suffered prejudice because of the defendants' belated attempts to present evidence on their own behalf. The SEC asserts that the defendants' introduction of evidence at that late stage was unfair because it would delay action on the SEC's motion for summary judgment. This contention lacks substance. It was the SEC itself that had set the time table by filing its motion for preclusion simultaneously with a request for summary judgment. The SEC's motion was apparently the first indication given to defendants that they might be unable to present any kind of defense or that a trial on the merits might not be held. If the SEC had wished to avail itself of a claim of prejudice -- asserting that defendants had "sandbagged" the agency at the eleventh hour -- the appropriateness of a preclusion order should have been resolved before the motion for summary judgment was filed.

Moreover, any allegation that the SEC was surprised by suddenly being confronted with new and unexpected evidence must be received with some caution. As noted earlier, Ackerly and Adams were but two of seven defendants who had been sued by the

14

SEC. Before Adams and Ackerly appeared at the hearing, two co-defendants, Shawn M. Crane and Robert L. Rock, had entered into consent judgments for the disgorgement of $60,663.15 and $279,074.00, respectively,[2] and had agreed to testify at any evidentiary proceeding requested by the SEC. In addition, the SEC had already taken the depositions of several individuals whose testimony was cited by the district court in support of summary judgment.

The SEC possessed substantial evidence in addition to the material that Adams asserted he had made available. It is apparent that the government had devoted substantial resources to expose the fraudulent security arrangements and to proceed against those responsible. Therefore, this appears to be a far cry from a case where invocation of the privilege prevented the opposing party from obtaining the evidence it needed to prevail in the litigation.

Nothing presently in the record persuades us that the SEC would have been unable to present a strong case even if Adams and Ackerly had been permitted to testify if they chose. The severe remedy of barring defendants from presenting any evidence from third parties was even less necessary. The preclusion sanction did not "level the playing field," but tilted it strongly in favor of the SEC. Courts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether criminal proceedings will be initiated,

---

[2]The amount of these judgments stand in stark contrast to the approximately $60.5 million assessed against Adams and Ackerly.

special consideration must be given to the plight of the party asserting the Fifth Amendment.

Although we believe the remedy here went beyond that which was equitable under the circumstances, we recognize the burden that pro se representation imposes upon extremely busy district judges. Obviously, the failure of Adams and Ackerly to present proper legal arguments in response to the motion for preclusion did not alert the district judge in this case to the factors that should be considered in directing an appropriate remedy.

We should not be understood as holding that, in the circumstances of this case, no remedial measures should be imposed. Those steps, however, should be those that are necessary to prevent a party from being unduly prejudiced and to allow for reimbursement of any additional sums a party actually incurred as a direct result of its opposition's invocation of the privilege. It is not always possible or necessary that such adjustments be computed precisely, but some rough justice evaluations would be in order.

The imposition of an appropriate remedy is within the discretion of the trial court. When significant factors are not weighed in making that determination, however, we must remand so that a proper evaluation may be reached.

The judgment in this case was based upon a record that was deficient because of an inappropriate order of preclusion. The judgment, therefore, will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

16