## Homestead Land Services Inc. v. Mortgagexpress Financial Services Inc.

C.P. of Monroe County, no. 8183 Civil 1999.

*David B. Snyder,* for plaintiff.
*Marc Morley Kane,* for defendant Mortgagexpress.
*Platt B. Moring III,* for defendant American Mtg. Funding.
*Edward A. Schenck,* for defendants Russell and Miller.
*Stephen R. Kaufman,* for defendant State (Cr. Investigator).

CHESLOCK, *J.,* March 15, 2000—Plaintiff Loree Guthrie is the owner of real property subject to a mortgage entered into on April 3, 1996 and held by PNC Mortgage Corporation. Guthrie decided to refinance said mortgage through a new loan from defendant, Mortgagexpress Financial Services Inc., a mortgage bank. Mortgagexpress agreed to loan Guthrie $96,500 for the refinance. Settlement on the refinance occurred on October 7, 1999. Plaintiff, Homestead Land Services Inc., a title insurance agency, conducted the closing and issued checks to parties who received payment disbursements at the closing. At settlement, Mortgagexpress supplied a check in the amount of $95,133.08, payable to Homestead and representing the proceeds of Mortgagexpress' "refinance" loan to Guthrie. Said check was returned for insufficient funds twice. Consequently, plaintiffs commenced this action by filing a writ of summons on November 5, 1999. On November 11, 1999, plaintiffs filed a complaint in equity.

Since the revocation of its mortgage bank license in late November 1999, Mortgagexpress no longer conducts

mortgage-banking business. Defendant Harvey Young was Mortgagexpress' president, chief executive officer, a director, and the majority shareholder. As of January 3, 2000, Young, individually, is a defendant in four cases involving insufficiently funded Mortgagexpress checks totaling approximately $2,000,000. In addition, Young is currently the subject of a federal investigation of the Mortgagexpress matter.

On December 27, 1999, plaintiffs filed a motion to compel the deposition of Harvey Young and a designee of Mortgagexpress. On January 3, 2000, Mortgagexpress and Young filed a petition for the following: (1) a temporary stay of proceedings; (2) to enlarge time to answer or otherwise plead to the complaint; and (3) a temporary protective order halting discovery. On the same date, plaintiffs filed a praecipe for default judgment against Mortgagexpress and Young. Judgment on Counts I, II, and III of the complaint was entered against Mortgagexpress. In addition, judgment on Counts IV and V of the complaint was entered against Young. On January 10, 2000, Mortgagexpress and Young filed a second petition for the following: (1) a temporary stay of proceedings; (2) an indefinite extension of time to answer or otherwise plead; and (3) for a protective order suspending discovery.[1] Plaintiffs filed a response to defendants' January 10, 2000 motion on January 26, 2000.

Plaintiffs' motion to compel depositions and Mortgagexpress and Young's January 10, 2000 motion were praeciped for the March argument term. On March 6, 2000, oral argument was heard before this court. We are

1. On January 12, 2000, this court denied Mortgagexpress and Young's January 10, 2000 motion due to our misconceptualization that said motion was identical to the defendant's January 3, 2000 motion. After being informed of our mistake, we granted reconsideration of the January 10, 2000 motion.

now ready to dispose of plaintiffs' motion to compel and Mortgagexpress and Harvey Young's January 10, 2000 motion.

First, Young asks this court to grant an indefinite stay of any discovery from him, in either an individual capacity or as a Mortgagexpress representative, until the criminal investigation or any resulting criminal proceeding against him terminates. Young contends that if he defends this civil case, he will be forced to abandon his Fifth Amendment rights against self-incrimination.

The privilege against self-incrimination is guaranteed by the Fifth Amendment of the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. The privilege protects an individual from being compelled to testify against himself in both criminal and civil proceedings, formal or informal, where the answers to questions might incriminate the individual in future criminal proceedings. *McDonough v. PennDOT,* 152 Pa. Commw. 384, 390, 618 A.2d 1258, 1261 (1992); *Commonwealth v. Lutz,* 152 Pa. Commw. 377, 380, 618 A.2d 1254, 1255 (1992). The privilege applies not only at trial, but during the discovery process as well. *S.E.C. v. Graystone Nash Inc.,* 25 F.3d 187, 190 (3d Cir. 1994). A witness can only assert the privilege when he is being asked to testify to self-incriminating facts and "only when a witness is asked a question which requires an incriminating answer. *Lutz,* 152 Pa. Commw. at 380, 618 A.2d at 1255; *McDonough,* 152 Pa. Commw. at 390, 618 A.2d at 1261.

The mere pendency of a parallel criminal proceeding is not dispositive in the determination of whether to grant a stay or continuance to protect a party's privilege against self-incrimination. In *McDonough,* appellant was simultaneously involved in civil litigation due to the suspen-

sion of his driving privileges for one year and in criminal litigation for a driving under the influence charge. *Id.* Appellant moved to continue the suspension hearing until the criminal trial was complete on the basis that he could not testify at the suspension hearing without waiving his privilege against self-incrimination. *Id.* The *McDonough* court held that conducting an administrative hearing prior to the disposition of a criminal case arising from the same matter is not a per se violation of a defendant's Fifth Amendment privilege. *Id.* at 391, 618 A.2d at 1261; *Lutz* at 381, 618 A.2d at 1256.

Young relies on *Cotter v. State Civil Service Commission*, 6 Pa. Commw. 498, 297 A.2d 176 (1972), in support of his argument to stay or continue this proceeding. In *Cotter*, the appellant's employment with the Pennsylvania Department of Transportation was terminated after he was charged with an accessory after the fact in the sale of a stolen motor vehicle. *Id.* Appellant appealed his dismissal to the State Civil Service Commission and requested a continuance to protect his Fifth Amendment privilege. *Id.* Appellant contended that if he asserted his Fifth Amendment privilege he could not pursue the appeal of his dismissal and if he testified, he might waive his Fifth Amendment privilege. *Id.* The *Cotter* court held that, under the circumstances, a continuance was proper.

However, the court also stated that "we are not holding that the commission was bound to continue its hearing until the criminal charges filed against appellant had been finally disposed of by the criminal courts." *Id.* at 501, 297 A.2d at 178.

*Cotter* is distinguishable. In *Cotter*, the appellant had been charged with a crime. Here, Young is simply under investigation; he has not even been declared a target. In addition, on appeal, the *Cotter* court had the benefit of

hindsight in making its ruling that a continuance should have been granted. Because the criminal charges against the appellant were withdrawn upon the district attorney's motion, a continuance would have eliminated appellant's dilemma of being forced to choose unnecessarily to refrain from testifying in his own defense, resulting in an undeveloped and incomplete record. Here, we do not know if criminal charges will even be filed. Defense counsel stated that from the date that an indictment is obtained, approximately one year would pass before a criminal trial begins. Because of the vast quantities of documentation the federal investigators must analyze, it is difficult to determine when, if ever, an indictment against Young will be issued. Furthermore, we are merely at the discovery phase of this matter. Discoverable information is not necessarily admissible information at either the civil trial or the potential criminal proceedings against Young. Excepting a bald assertion that participating in the deposition would jeopardize his Fifth Amendment rights in a possible criminal case, Young has not explained how his testimony at the deposition would prejudice him.

It is illogical and unfair to postpone plaintiffs' cause of action for an indefinite period of time due to speculation. See *McDonough,* 152 Pa. Commw. at 392, 618 A.2d at 1261. Whether or not Young will run the risk of self-incrimination, whether or not a criminal indictment against Young will ever be obtained, and whether or not a criminal trial will take place is all speculative. Young is able to answer those deposition questions he can without running the risk of incrimination, and invoke his Fifth Amendment privilege for those deposition questions which require an incriminating answer. If Young asserts his Fifth Amendment privilege, the United States Con-

stitution will offer protection by limiting the imposition of any sanction that makes his assertion of the privilege "costly." See *Graystone Nash Inc.*, 25 F.3d at 190-91.

Second, Young asks this court for an indefinite extension of time to answer the complaint or any other responsive pleading which is required by him, either in an individual capacity or as a Mortgagexpress representative, until the criminal investigation or any resulting criminal proceeding against him terminates. The record reflects that plaintiffs' complaint was filed on November 11, 1999. Young and Mortgagexpress did not file an answer to said complaint. Instead, they filed a motion on January 3, 2000 requesting an extension of time in which to file an answer. Defense counsel neither informed this court of any procedural rule that stays the deadline for an answer to a pleading due to the filing of a motion, nor is this court aware of the existence of any such rule.

We are aware of Rule 1003, which allows parties to waive filing deadlines by agreement.[2] Here, Young and Mortgagexpress had the opportunity to approach plaintiffs for another time extension in which to file an answer.

Furthermore, in a letter addressed to this court and dated March 9, 2000, Young contends that plaintiffs' default judgments constitute "costly" sanctions against Young and Mortgagexpress for their testing of whether a person under criminal investigation must verify pleadings, and waive his Fifth Amendment rights. This court does not view plaintiffs' default judgments as sanctions.

---

2. Rule 1003 states that "[r]ules relating to the manner of commencing an action or the time for serving process or for filing or serving pleadings may be waived by agreement of the parties. Pa.R.C.P. 1003.

Rather, we believe that said default judgments are proper procedural tactics.

A default judgment cannot be entered against a party unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered to the opposing party. Pa.R.C.P. 237.1(a)(2)(ii). The record reflects that such certifications were included in plaintiffs' praecipe for default judgment against both Young and Mortgagexpress. Furthermore, the notices were dated December 9, 1999. Obviously, Young and Mortgagexpress were aware of the possibility of a default judgment being entered against them well before they filed their January 3, 2000 motion. Therefore, we disagree with defendants that plaintiffs pursued justice by "snap judgments." It is now Young and Mortgagexpress' option to petition to open said default judgments.

Accordingly, we enter the following order:

## ORDER

And now, March 15, 2000, defendants Harvey W. Young and Mortgagexpress Financial Services Inc.'s petition for (i) a temporary stay of proceedings; (ii) an indefinite extension of time to answer or otherwise plead; and (iii) for a protective order suspending discovery is hereby denied. Defendants, Harvey W. Young and Mortgagexpress Financial Services Inc., shall file an answer to plaintiffs' complaint within 20 days of the date of this order.

Plaintiffs' motion to compel the deposition of Harvey W. Young and a designee of Mortgagexpress Financial Services Inc. is hereby granted. Said deposition shall be scheduled on or before May 15, 2000.