# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE STATE OF DELAWARE, )
)
      Plaintiff, )
)
v. ) C.A. NO.: N16C-05-138 AML
)
DA ZHONG WANG, )
)
      Defendant. )

Submitted: February 12, 2018
Decided: May 11, 2018

**Upon Parties' Cross Motions for Summary Judgment: Denied**

**<u>MEMORANDUM OPINION</u>**

Oliver J. Cleary, Esquire, of the STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorney for Plaintiff.

Brian T.N. Jordan, Esquire, of JORDAN LAW, LLC, Wilmington, Delaware, Attorney for Defendant.

**LeGrow, J.**

The State has brought a civil racketeering claim against Da Zhong Wang for allegedly operating a prostitution ring in Delaware. The complaint lists four predicate acts, including three acts of prostitution by Defendant's former employees over the course of approximately twelve and a half months. Although multiple material issues of fact remain, both parties seek summary judgment, while simultaneously arguing disputed facts preclude the opposing party's motion.[1]

The primary issues the parties raise are whether the undisputed facts require judgment as a matter of law against Defendant, or whether the State's case fails on its face on the required elements of continuity and relatedness. Contrary to the requirements of Rule 56, each party asks the Court to make inferences and view the facts in the light most favorable to the *moving* party.[2] The Court, however, cannot depart from Rule 56. When viewing the facts in light most favorable to the *nonmoving* party, both motions must be denied because the resolution of these claims will depend on the fact finder's resolution of material factual disputes. Accordingly, both motions for summary judgment are DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are drawn from the complaint and the record the parties provided with their briefs. Mr. Wang ("Defendant") is a Chinese citizen who formerly

---

[1] That is, the parties have not filed cross motions under Rule 56(h).

[2] *See, e.g.*, Pl.'s Reply Supp. Mot. Summ. J. at 8 ("It may fairly be inferred from the nature of the undisputed facts that the Defendant and his associates engaged in considerably more acts than those charged in this complaint.").

1

operated a chain of massage parlors in Delaware. These parlors included, among other locations, Relaxed Spa in Rehoboth Beach (the "Rehoboth Beach location"), Massage Center in Middletown (the "Middletown location"), and Da Wang's Bodyworks in Dover (the "Dover location").

On November 18, 2013, an undercover Delaware State Police Trooper purchased a massage at the Middletown location. During the massage, the masseuse, Chunyan Li ("Ms. Li"), solicited the Trooper for an act of prostitution. When the Trooper searched the building, he found evidence that someone lived on the premises. Ms. Li was charged with prostitution, but the charge later was dismissed.

On January 9, 2014, another undercover Trooper purchased a massage at the Middletown location. The masseuse, Ms. Xiu Juan Zhang ("Ms. Juan Zhang") solicited the Trooper for a sexual act during the massage. Ms. Juan Zhang was charged with prostitution, but the charge was dismissed. Later, an investigator with the Division of Professional Regulation encountered Ms. Juan Zhang at the Dover location. When the investigator showed Ms. Juan Zhang a picture of Defendant, she identified him as "boss."

In April 2014, the City of Dover Public Works investigated a clog in the sewer pipes at the Dover location. The Public Works employees discovered that a bag of used condoms caused the blockage. In December 2014, Public Works

2

employees again discovered a bag of used condoms and other detritus was blocking the sewer line. Police investigated the Dover location and interviewed Ms. Juan Zhang and Shuquing Wang. Police discovered a functioning kitchen and bedroom with a sofa, blanket, and pillow at the premises. The police interviewed Mr. Wang regarding the issues at the Dover location. Mr. Wang represented Ms. Juan Zhang was his former employee, but that he fired her after her prostitution charge. When asked why a former employee appeared to be living at the Dover location, Mr. Wang would not answer. Ms. Juan Zhang also was Mr. Wang's ex-wife, but he did not indicate that was why she lived at the Dover location.

In a separate incident, on December 4, 2014, an undercover Trooper purchased a massage at the Rehoboth Beach location. Again, the masseuse, Ms. Meizhu Zhang, solicited the Trooper for a sexual act during the massage. In addition, the Trooper found evidence that someone lived on the premises. Ms. Meizhu Zhang pleaded guilty to prostitution in the Court of Common Pleas of Sussex County on December 11, 2014. Mr. Wang was charged with promoting prostitution and permitting prostitution relating to the Rehoboth Beach location. He pleaded guilty to permitting prostitution on April 19, 2015, and the State in return dismissed the promoting prostitution charge.

On April 7, 2015, the Board of Massage and Bodywork ("the Board") held a hearing to consider evidence regarding complaints filed by the State against Mr.

Wang. Despite receiving notice of the hearing, Mr. Wang did not attend. On June 5, 2015, the Board entered a final order suspending Mr. Wang's professional license and imposing $2,000 in civil penalties. On May 13, 2016, the State filed the complaint in this case. Both parties filed motions for summary judgment.

## THE PARTIES' CONTENTIONS

In its summary judgment motion, the State argues generally that no issues of material fact remain regarding Defendant's liability for civil racketeering. First, the State argues that offensive collateral estoppel should apply to the Board's factual findings. Second, the State argues evidence remains unrebutted that Defendant operated and benefitted from a criminal enterprise and that the prostitutes worked for him. Third, the State argues the Court should draw an adverse inference from the various tax-related Requests for Admission in response to which Defendant invoked the Fifth Amendment.

In Defendant's motion for summary judgment, he argues the State cannot prove the relatedness requirement under Section 1502(5), "Pattern of Racketeering Activity," because the predicate acts lack a common purpose and involved different victims. Defendant also argues the State cannot prove Section 1502(5)'s continuity requirement because the predicate acts only span a twelve-and-a-half-month period and do not pose a threat of continued criminal activity.

## ANALYSIS

Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[4] The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[5]

A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[6] If the movant makes such a showing, the burden then shifts to the non-moving party to submit sufficient evidence to show that a genuine factual issue, material to the outcome of the case, precludes judgment before trial.[7]

---

[3] Super. Ct. Civ. R. 56(c).

[4] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

[5] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

[6] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

[7] *Id.*; *see also Brzoska*, 668 A.3d at 1363.

## I. There are material factual disputes that preclude judgment as a matter of law in favor of the State.

In this case, the State alleges Defendant violated Delaware's Organized Crime and Racketeering Act, 11 *Del. C.* §§ 1501 *et seq.* (the "RICO Statute"). Specifically, the State alleges four predicate acts that it contends constitute racketeering, including three counts of prostitution and one count of permitting prostitution. Under the RICO Statute, a person is prohibited from engaging in a pattern of racketeering activity, which is defined as "two or more incidents of conduct [t]hat [c]onstitute racketeering activity[,] [a]re related to the affairs of the enterprise[,]" and "[a]re not so closely related to each other and connected in point of time and place that they constitute a single event . . . ."[8] "Racketeering activity" includes, pertinently, any activity constituting a felony or activity constituting a misdemeanor under Chapter 5 of Title 11 relating to prostitution.[9] In this motion, the State alleges that the four predicate acts in the complaint and the undisputed facts show Defendant engaged in a pattern of racketeering activity.

---

[8] 11 *Del. C.* § 1502(5).
[9] *Id.*; *see also* 11 *Del. C.* § 1354.

**A. Offensive collateral estoppel does not apply to the Board's findings because the damages at issue before the Board comparatively were small and the hearing afforded the parties fewer procedural opportunities.**

The State argues offensive collateral estoppel should apply to the Board's findings of fact because the parties and issues are identical.[10] Offensive use of collateral estoppel occurs when a plaintiff seeks "to foreclose [a] defendant from relitigating an issue th[at] defendant has previously litigated unsuccessfully in an action with another party."[11] Effectively, the doctrine allows a plaintiff to use factual findings from one proceeding against a defendant. The doctrine protects litigants "from the burden of relitigating an identical issue with the same party or his privy" and promotes judicial economy by eliminating unnecessary relitigation of issues.[12]

On the other hand, offensive collateral estoppel may, at times, yield an unfair result. The presiding court therefore must consider four factors that militate against applying offensive collateral estoppel:

(1) It does not promote judicial economy in the same manner as defensive use. A plaintiff does not have as strong an incentive to join all defendants in the first action since offensive use encourages the adoption of a "wait and see" attitude.

---

[10] Defendant does not dispute that offensive collateral estoppel applies to his permitting prostitution conviction.

[11] *Delaware Elec. Co-op., Inc. v. EMT Const. Corp.*, 2003 WL 21018044, at *6 (Del. Super. May 2, 2003) (alteration in the original).

[12] *Chrysler Corp. v. New Castle Cty.*, 464 A.2d 75, 81 (Del. Super. June 8, 1983) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

7

(2) If in the first litigation the damages are small or if other suits are unforeseeable, the defendant may have little incentive to vigorously defend.

(3) The judgment relied upon could be inconsistent with other judgments favorable to the defendant.

(4) The second litigation could present procedural opportunities absent in the first which could cause a different result in the second.[13]

Here, the risk of applying dispositive weight to the Board's findings outweighs any benefits achieved through efficiency. First, the damages at issue before the Board were small when compared to the relief sought in this case. Although losing a professional license presumably would incentivize a vigorous defense by Defendant, he was living in New York at the time and may not have intended to return to Delaware. Defending a license to practice in a distant state, therefore, may not have seemed worth the effort. In contrast, the State seeks $700,000 in damages from Defendant in this case. It is reasonable to infer that Defendant has more incentive to defend this case than he did the case before the Board.

Second, the Superior Court rules provide more procedural opportunities to the parties than do the Board's rules. Specifically, the parties in this proceeding have broader discovery rights under Superior Court Civil Rule 26. The State concedes depositions generally are not available in Board proceedings and other discovery may be more limited, although the State speculates the Board may have

---

[13] *Id.* at 82.

allowed additional discovery in Defendant's case. That speculation cannot carry the day, especially because even in these proceedings the State refused to produce certain documents until a confidentiality agreement was reached. The differences between the stakes of the proceedings and the lack of full discovery in the Board proceedings weighs against application of offensive collateral estoppel in this case.

### B. Defendant's tax records do not establish Defendant operated a criminal enterprise as a matter of law.

During discovery, Defendant responded to several of the State's requests for Admission by invoking his Fifth Amendment privilege against self-incrimination. All the Requests for Admission at issue relate to the various spa locations' tax returns. The State argues the Court should view these requests as admitted to the extent the requests seek factual information. Specifically, the State argues the Court may infer Defendant did not report or remit properly the income derived from the massage parlors. The State further argues these admissions are somehow relevant to the Court's analysis of the racketeering claims, without clearly explaining how an adverse inference regarding violation of tax laws relates to the charged predicate acts of prostitution.

The Third Circuit has held that, generally, "reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. Use of the privilege in a civil case may, therefore, carry some

disadvantages for the party who seeks its protection."[14]    Application of the privilege involves complications regarding when the privilege properly may be invoked and assessing when it may cause unfair prejudice to the opposing party. The Court, however, need not address these issues at this stage.

The predicate acts alleged in the complaint relate to prostitution and Defendant's involvement in permitting or promoting prostitution at his massage parlors.  An adverse inference about the massage parlors' income or Defendant's compliance with tax laws would not establish as a matter of law that Defendant knew of or coordinated a prostitution ring.  Even if Defendant's alleged violation of tax laws constituted predicate acts of racketeering, those predicate acts were not alleged in the complaint and therefore are not relevant for summary judgment purposes.[15]  If the State seeks to add those predicate acts to this case, it must move to amend the complaint.  Accordingly, Defendant's knowledge and involvement in some of the charged predicate acts remains a disputed issue of fact.

### C. Material issues of fact remain regarding Defendant's knowledge of and connection to the acts of prostitution, as well as the relatedness or lack thereof between the various predicate acts.

The State argues it is unrebutted that Defendant operated a criminal enterprise and that the masseuses charged with prostitution worked for him.  The

---

[14] *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994).
[15] Without expressing an opinion, that conduct does not  appear to fall within the predicate acts defined in 11 *Del. C.* § 1502(9).

10

State concludes this evidence, combined with the predicate acts of permitting prostitution and the prostitution by the masseuses, sufficiently demonstrates a "pattern of racketeering activity" under Section 1502(5).

The State, however, fails to recognize the contested issues in this case. As discussed above, the State may not rely on the Board's factual findings. Second, Defendant does not concede that he operated a criminal enterprise. Third, although Defendant acknowledged some of the masseuses worked for him, he did not admit that they worked for him as prostitutes. To the extent some of the masseuses described Defendant as "boss," the Court must as this stage draw the reasonable inference they were referring to him as the boss of the massage parlor, not as their boss in a prostitution ring.

Additionally, although Defendant was convicted of permitting prostitution at the Dover location, he does not concede he knew about the predicate acts at the other locations mentioned in the complaint. Although there are facts in the record that support the State's version of events, many of those facts, or more accurately Defendant's knowledge of those facts and when he acquired that knowledge, are contested. The Court may not draw inferences in the State's favor at this procedural stage and the undisputed facts do not allow the Court to conclude as a matter of law that Defendant engaged in a pattern of racketeering activity.

11

**II.** **Defendant is not entitled to summary judgment because the disputed facts, viewed in a light most favorable to the State, would satisfy the elements of relatedness and continuity.**

In *H.J. Inc. v. Northwestern Bell Tel. Co.*,[16] the United States Supreme Court held that in order to prove a pattern of racketeering activity under the federal RICO statute, a plaintiff must "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."[17] In other words, a RICO plaintiff must show both relatedness and continuity in order to prove a pattern of racketeering activity.[18]

**A. The predicate acts satisfy relatedness because they involved similar participants and methods of commission.**

Defendant argues he is entitled to summary judgment because the predicate acts do not satisfy Section 1502's relatedness requirement because they lacked a common purpose and involved different victims. In other words, Defendant appears to argue the State must show the predicate acts involved the same purpose, result, participants, victims, *and* method of commission in order to establish relatedness.

In describing the relatedness sub-element, the *H.J. Inc.* Court held "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same

---

[16] 492 U.S. 229 (1989).
[17] *Id.* at 239.
[18] *Id.*

12

or similar purposes, results, participants, victims, *or* methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[19] There is no bright line rule for what constitutes "relatedness," and this vague term has challenged consistent application by federal courts.[20] The Third Circuit, however, has held that one factor—*i.e.*, purpose, result, participants, victims, *or* methods of commission—may establish a pattern of criminal activity.[21] For example, in *United States v. Bergrin*, the Third Circuit held an indictment satisfied the relatedness sub-element because each predicate act had the same or similar purpose.[22]

Here, the complaint lists three predicate acts involving similar participants and methods of commission. Mses. Li, Juan Zhang, and Meizhu Zhang each worked as masseuses in Mr. Wang's massage parlors. The methods of committing the predicate acts were similar in that each masseuse would solicit customers

---

[19] *Id.* at 240 (quoting 18 U.S.C. § 3575(e)).

[20] *See H.J. Inc.*, 492 U.S. at 252 (". . . § 3575(e) is utterly uninformative . . . . It hardly closes in on the target to know that 'relatedness' refers to acts that are related by 'purposes, results, participants, victims, ... methods of commission, or [just in case that is not vague enough] otherwise.' Is the fact that the victims of both predicate acts were women enough? Or that both acts had the purpose of enriching the defendant? Or that the different coparticipants of the defendant in both acts were his coemployees? I doubt that the lower courts will find the Court's instructions much more helpful than telling them to look for a 'pattern'—which is what the statute already says.") (Scalia, J., concurring) (alteration in the original).

[21] *See United States v. Bergrin*, 650 F.3d 257, 270 (3d Cir. 2011)

[22] *Id.* at 270 ("[T]he 'relatedness' sub-element of *H.J. Inc.* is satisfied because the indictment states that the predicate crimes were all committed for 'the same or similar purposes,' *e.g.*, 'promoting and enhancing the Bergrin Law Enterprise and its leaders', members' and associates' activities; enriching the leaders, members and associates of the Bergrin Law Enterprise; and concealing and otherwise protecting the criminal activities of the Bergrin Law Enterprise.'").

13

during the course of the massage, for similar amounts of money, and using similar language or gestures. When the undercover agents claimed not to have sufficient funds, the women invited them to return on a different day. Additionally, a surveillance officer reported that at least one of the locations advertised on the internet the presence of "young Asian females."[23] Under *H.J. Inc.*, and viewing the facts in the light most favorable to the State, it is reasonable to infer that Defendant engaged in a pattern of related criminal activity.

### B. Open-ended continuity is satisfied because it is reasonable to infer that prostitution was a regular way of conducting Defendant's massage parlors.

In addition to establishing the relatedness of criminal acts, a plaintiff also must "show[] that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."[24] "'Continuity' [may be either] a closed- [or] open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[25]

Defendant argues the State cannot satisfy open-ended continuity because the massage parlors have been shut down. Alternatively, Defendant argues the State

---

[23] App. to Pl's. Mot. Summ. J. 58.
[24] *Id.* at 240 (emphasis in the original).
[25] *Id.* at 241.

cannot satisfy Section 1502's close-ended continuity requirement because 12.5 months is an insufficient period of time under Third Circuit case law.

Open-ended continuity can be satisfied "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit."[26] In some cases, the continuity requirement is satisfied if the nature of the predicate acts involves a threat of repetition "indefinitely into the future."[27] In other cases, "[t]he continuity requirement is [] satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'"[28]

Here, it is reasonable to infer that prostitution was a regular way of conducting business at Defendant's massage parlors. The three predicate acts of prostitution involved masseuses soliciting customers during the course of a massage at the different parlors. At the Middletown and Dover locations, DSP found evidence suggesting the parlors also were used as living quarters with sleeping arrangements and laundry washing. Additionally, the Dover location clogged the sewer system with a bag of used condoms and other detritus on two

[26] *Id.*

[27] *Id.*

[28] *Id.* at 243. Defendant is not arguing that open-ended continuity only is available when the predicate acts continue at the time of trial. Rather, Defendant argues that concept only applies when the predicate acts have a specific threat of repetition. In other words, Defendant argues "it requires acts that carry an on-going threat as part of the predicate's nature." Def.'s Mot. Summ. J. 21.

15

occasions. These circumstances create a reasonable inference that prostitution was a regular part of conducting business at the massage parlors and therefore satisfy the open-ended continuity requirement.[29]

## CONCLUSION

For the reasons set forth above, both Motions for Summary Judgment are DENIED.

**IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:     Oliver Cleary, Esquire
        Brian Jordan, Esquire

---

[29] Because the Court concludes the predicate acts were open-ended, Defendant's argument that the State cannot satisfy closed-ended continuity is moot.

16