**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**
Plaintiff,

v.

**Sherwin P. BROWN, Jamerica Financial, Inc. and Brawta Ventures, LLC, Defendants.**

Civil No. 06–1213 (JRT/FLN).

United States District Court,
D. Minnesota.

July 20, 2009.

Robert M. Moye and Charles J. Kerstetter, United States Securities and Exchange Commission, Chicago, IL, for plaintiff.

Julie H. Firestone and Matthew D. Forsgren, Briggs & Morgan, P.A., Minneapolis, MN, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

JOHN R. TUNHEIM, District Judge.

This matter is before the Court on the objections of defendants Sherwin P. Brown ("Brown") and Jamerica Financial, Inc. ("Jamerica") to the Amended Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on February 23, 2009. After a *de novo* review of defendants' objections, this Court adopts the Report and Recommendation of the Magistrate Judge.

### BACKGROUND

The factual background of this case is described at length in *SEC v. Brown,* 579 F.Supp.2d 1228, 1230–33 (D.Minn.2008). In short, on March 29, 2006, the United States Securities and Exchange Commission ("SEC") filed this action alleging that Brown, through his companies Jamerica and Brawta Ventures, LLC ("Brawta"), violated multiple securities laws and misappropriated approximately $870,000 from investors. On September 30, 2008, this Court concluded that the unrefuted evidence demonstrated that Brown had exhibited severe recklessness in misappropriating the disputed funds, and granted summary judgment to the SEC on its claims against Brown and Jamerica. The Court also granted a permanent injunction against Brown and Jamerica to prevent future securities violations; ordered the disgorgement of $869,633 in misappropriated funds, along with prejudgment interest; and ordered the parties to submit additional briefing on the question of whether additional civil penalties should be imposed. Following the filing of that additional briefing and a hearing before the Magistrate Judge, the Magistrate Judge issued a Report and Recommendation recommending that this Court impose civil

penalties of $80,000 against Brown and $400,000 against Jamerica. Defendants now object to those recommendations.

## ANALYSIS

### I. CIVIL PENALTIES

In its Order granting summary judgment, this Court concluded that Brown and Jamerica violated Section 17(a) of the Securities Act of 1933 ("the Securities Act"), Section 10(b)(5) of the Securities Exchange Act of 1934 ("the Exchange Act"), and the Investment Advisers Act of 1940 ("the Advisers Act"). Each of these Acts provides for the imposition of civil penalties. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b–9(e).

 "A civil penalty is intended both to punish the individual violator and to deter future violations of the securities laws." *SEC v. Marker*, 427 F.Supp.2d 583, 592 (M.D.N.C.2006). Such a penalty is necessary "because disgorgement merely requires the return of illegal profits; it does not impose an actual economic penalty as a deterrent to violations of the securities laws." *Id.* "In determining whether civil penalties should be imposed, and the amount of the fine, courts look to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Opulentica, LLC,* 479 F.Supp.2d 319, 331 (S.D.N.Y.2007). In short, "[t]he amount of a civil penalty should be determined in light of the facts and circumstances of the particular case." *Marker*, 427 F.Supp.2d at 592 (internal quotation marks omitted).

The securities statutes violated by defendants also provide a three-level "tier" structure to assist courts in determining an appropriate civil penalty. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B), 80b–9(e)(2). The first tier applies to basic violations of the securities statutes; the second tier applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and the third tier applies to violations that meet the second tier standard and also "resulted in substantial losses or created significant risk of substantial losses to other persons." *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B), 80b–9(e)(2). The maximum penalty for an individual under tier one is $6,500; the maximum under tier two is $60,000; and the maximum under tier three is $120,000. *See* 17 C.F.R. pt. 201, subpt. E, tbl.II. The maximum penalty for a corporation under tier one is $60,000; the maximum under tier two is $300,000; and the maximum under tier three is $600,000. *Id.* For third-tier violations, however, courts may assess a penalty equal to the gross pecuniary gain of the defendant irrespective of whether that amount exceeds the maximums listed above. *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b–9(e)(2)(C).

Here, the Magistrate Judge determined that the evidence in this case supports third-tier penalties against both Brown and Jamerica. The Magistrate Judge explained that out of $1.62 million that was transferred to Brown by investors, more than $800,000 was diverted to non-investment purposes, including the payment of Brown's personal debts. The Magistrate Judge added that Brown had taken several steps to conceal this diversion of assets, including asking a business associate to lie about the purpose of a $22,500 payment he had received from Brown. Finally, the Magistrate Judge emphasized that Brown's violations were recurring, and

that he had violated the asset freeze put in place after the filing of this lawsuit. In light of that background, the Magistrate Judge recommended imposing an $80,000 penalty against Brown and a $400,000 penalty against Jamerica. The Court notes that these penalties are considerably lower than either the maximum penalties available under tier three of the statutory structure described above or defendants' apparent pecuniary gain from their fraudulent conduct.

■ Defendants now offer two objections to these penalties. First, defendants argue that this Court should consider the unfairness of Brown having to defend against an SEC investigation while it was still uncertain whether he would be charged with a crime. This Court has dealt with this subject on at least two prior occasions, and finds no basis for revisiting it here, or factoring it into the Court's civil penalty assessment. *See Brown,* 579 F.Supp.2d at 1233–34. In short, this case involved an extensive, clearly-established fraud against numerous innocent investors, and the uncertain possibility of Brown being indicted at some point in the future was not an adequate basis for an indefinite delay. Congress has designed a civil penalty structure to supply deterrence against this type of conduct, and the Court finds nothing in the facts of this case that would justify foregoing such penalties here.

Next, defendants argue that these penalties should be reduced to account for Brown's weakened financial condition. This issue was considered and rejected by the Magistrate Judge, who explained that defendants had not offered any evidence of their financial condition, and that financial information submitted by the SEC showed that Brown had continued to deposit substantial sums into his bank account in the last months of 2008. (*See* Pl.'s Mem.,

Docket No. 362, Ex. 2.) In spite of this plain explanation of the shortcomings in their evidence, defendants have submitted no additional evidence with their objections. In those circumstances, the Court will not treat defendants' bare assertions as a basis for reducing the Magistrate Judge's suggested civil penalties. Accordingly, the Court adopts the Report and Recommendation of the Magistrate Judge.

## ORDER

Based upon all the files, records and proceedings herein, the Court **OVERRULES** defendants' objections [Docket No. 374] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 372]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Sherwin Brown shall pay a civil penalty in the amount of $80,000; and

2. Jamerica Financial, Inc. shall pay a civil penalty in the amount of $400,000.

## AMENDED REPORT AND RECOMMENDATION

FRANKLIN L. NOEL, United States Magistrate Judge.

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 15, 2009, on a hearing to determine whether civil penalties are appropriate in this case [# 364]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends a $400,000 penalty be imposed on Jamerica and a $80,000 penalty on Sherwin Brown.

## BACKGROUND [1]

On September 30, 2008, Judge Tunheim granted the Securities and Exchange Com-

---

1. For a recitation of the facts, refer to Judge Tunheim's September 30, 2008 Order Adopt-

ing this Court's Report and Recommendation [Dkt. 349].

mission's ("SEC") Motion for Summary Judgment and ordered the parties to file additional briefs addressing whether a civil penalty is appropriate in this case. (See Dkt. 349.)

## ANALYSIS

In granting the SEC's motion for summary judgment, the Court concluded that Sherwin Brown and Jamerica violated Section 17(a) of the Securities Act of 1933 ("the Securities Act"), Section 10(b)(5) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10–b5 thereunder and the Investment Advisers Act of 1940 ("the Advisers Act"). These Federal Securities laws provide for identical civil monetary penalties and are "intended to both punish the individual violator and to deter future violations of the securities laws." *SEC v. Marker*, 427 F.Supp.2d 583, 592 (M.D.N.C.2006). Fines are delineated in three tiers. The first tier sets a range for simple violations of the statute; the second tier is the range for violations involving fraud; the third tier sets the range for violations involving fraud which "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 15 U.S.C. 80b–9(e). For a corporation, the potential penalty allowed under the third tier ranges from a maximum of the gross amount of pecuniary gain to the defendant as a result of the violation or $600,000(whichever is greater) to a minimum of $300,001 (anything less would be a second tier penalty). For an individual, the potential penalty allowed under the third tier ranges from a maximum of the gross amount of pecuniary gain to the defendant as a result of the violation or $120,000 down to $60,001. *Id.*; 17 C.F.R. § 201.1002 (at Table II) (reflecting adjustment in civil penalty amounts to account for inflation).

To determine whether a civil penalty is appropriate, courts look to a number of factors, including: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurring; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Securities and Exchange Commission v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y.2007). Courts have also considered whether the defendant has cooperated with authorities. *SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045, 1050 (S.D.Ind.2005); *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir.2003). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" *Opulentica*, 479 F.Supp.2d at 331 (quoting *SEC v. Moran*, 944 F.Supp. 286, 296–97 (S.D.N.Y.1996)).

■ In determining the amount of penalties, the court may consider whether the defendant faces other criminal or civil sanctions and his or her financial condition. *Church Extension of the Church of God, Inc.*, 429 F.Supp.2d at 1051; *SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341 at *4 (S.D.N.Y. Aug. 23, 2002).

Brown's violations of the securities laws support the imposition of a third-tier penalty. Brown received more than $1.62 million from investors for the purpose of investing in Brawta. (September 30, 2008 Order of Judge Tunheim [Dkt. 349] (hereinafter "Tunheim Ord.") 579 F.Supp.2d at 1236–37.) Instead of investing all of the funds, an audit by the SEC showed that

$496,550 of these funds were transferred to Jamerica; $262,906 were transferred to Brown or used to pay his personal debts; and $110,177 were withdrawn by checks payable to U.S. Bank and the SEC was unable to determine how exactly the money was spent. (*Id.*) The evidence showed that Brown attempted to conceal many of these transfers by (1) converting funds to cash by writing checks directly to banks; (2) asking Gullickson to lie about the purpose of the $22,500 he received from Brawta; and (3) falsely characterizing contributions from Brawta to Jamerica as capital contributions from Brown. (*Id.*)

Brown's degree of scienter in this case was relatively high. In securities fraud cases, scienter can be proven with evidence of "conduct which rises to the level of severe recklessness." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 893 (8th Cir.2002). The Court found that this was a rare case in which there was no genuine issue of material fact on the issue of scienter because there was "overwhelming evidence" of severe recklessness. (Tunheim Ord., 579 F.Supp.2d at 1236.) Defendants' argument that "there should be no finding of scienter" is misplaced as the Court has already concluded the Defendants acted with reckless disregard of the regulatory requirements. (Defendants' Mem. in Opp. at 2.)

Defendants' conduct caused substantial losses or the risk of substantial losses to the investors. The Court found that they misappropriated $877,236.16.

As to whether Defendants' conduct was isolated or recurring, it was recurring. Sherwin Brown repeatedly diverted funds in at least three different ways, by transferring money to the Jamerica account, to his personal account and by writing checks to banks. He also wrote a check to Tim Gullickson from the Brawta checking account.

Further, during the course of this lawsuit, Brown did not fully cooperate with authorities and, as a result, was held in contempt of court for violating the preliminary injunction and asset freeze issued by the Court. Defendants contend that no penalty should be imposed because they cooperated with authorities. As evidenced by the finding of contempt, however, Defendants' cooperation was not substantial enough to warrant no imposition of a penalty.

The SEC seeks a third tier penalty against Brown individually and against Jamerica. As noted above, third tier penalties are for violations involving fraud which "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 15 U.S.C. 80b–9(e).

Here, a third tier penalty is appropriate. The SEC has asked for a penalty of $120,000 against Sherwin Brown and a penalty of $500,000 against Jamerica even though there were multiple statutory violations and the theoretical maximum for each violation is "the gross amount of pecuniary gain to such defendant as a result of the violation." *Id.*

The Court agrees that only a single penalty in the third tier should be imposed on each Defendant. Although Defendants' conduct violated three separate statutes, it was essentially a single course of conduct that violated all three statutes. The range of penalties is the same for the violation of each of the three statutes.

Defendants contend that no penalty should be imposed due to their financial condition which would render them unable to pay any civil fine. They offer no evidence in support of this contention. The single exhibit submitted by the SEC with their brief indicates that Defendants received close to $100,000 in Jamerica cus-

tomer account fees between August 1, 2008 and October 9, 2008. (*See* Dkt. 362–2.) In spite of receiving investor fees, Brown claims to be receiving public assistance. Regardless, the Defendants' supposed inability to pay the fine should not preclude the imposition of a penalty.

At the hearing on this issue, Defense counsel also alluded to various news accounts of securities fraud cases involving losses substantially greater than the losses Defendants here caused. The maximum third tier penalty, counsel argued, should be reserved for those more egregious cases.

In light of the financial condition of the Defendants, the amounts that can be traced to Jamerica's bank account ($496,-550) and to Brown's bank account ($262,-906), and the other considerations discussed above, the Court concludes that a single penalty in the mid-range of the third tier is appropriate for both Brown and Jamerica.

## RECOMMENDATION

Based upon all of the files, records and proceedings herein, it is hereby RECOM-MENDED that Brown pay a penalty of $80,000 and Jamerica pay a penalty of $400,000.

DATED: February 23,2009