# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2479

_____

Securities and Exchange Commission,      *
                                         *
           Appellee,                     *
                                         *    Appeal from the United States
     v.                                  *    District Court for the
                                         *    District of Minnesota.
Sherwin P. Brown,                        *
                                         *        [TO BE PUBLISHED]
           Appellant,                    *

_____

Submitted: February 7, 2011
Filed: October 13, 2011

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Sherwin Brown is the President and fifty-percent owner of Jamerica Financial, Inc. ("Jamerica"), a Minneapolis-based registered investment adviser. Between May 2004 and January 2006, fifty-three clients invested $1.62M in Brawta Ventures, LLC ("Brawta"), a private investment fund organized by Brown. In March 2006, after a brief but intense investigation, the Securities and Exchange Commission (SEC) commenced this civil enforcement action against Brown, Jamerica, and Brawta alleging that their fraudulent misrepresentations and diversion of Brawta funds violated Sections 17(a)(1)-(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1)-(3); Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b);

Sections 204 and 206(1)-(2) of the Investment Advisers Act, 15 U.S.C. §§ 80b-4, 80b-6(1)-(2); and SEC Rules 10b-5 and 204-2, 17 C.F.R. §§ 240.10b-5, 275.204-2.

Initially, the district court[1] granted a preliminary injunction, froze defendants' assets, and ordered Brawta to undertake and submit a sworn independent accounting. When this accounting confirmed SEC allegations of fund diversions, and Brown petitioned for Chapter 7 bankruptcy relief, the court appointed a receiver to represent Brawta and its investors. The receiver filed an adversary proceeding in Brown's bankruptcy case seeking remedies for the defrauded Brawta investors. In February 2009, the bankruptcy court granted the receiver summary judgment on these claims, denying Brown certain exemptions, granting a constructive trust on his homestead equity and a portion of his personal retirement account, and excepting from discharge amounts misappropriated from Brawta. That order is not here at issue.

Meanwhile, in September 2008, the district court granted the SEC summary judgment in this civil action, permanently enjoining Brown and Jamerica from future violations of the securities laws, and ordering them, jointly and severally, to disgorge misappropriated investor funds in the amount of $869,633, subsequently increased by $226,380.77 in prejudgment interest. *SEC v. Brown*, 579 F. Supp. 2d 1228 (D. Minn. 2008). In resolving the motion for summary judgment, the district court refused to allow Brown to rely on interrogatory responses in which he offered "the broad explanation" that transfers from Brawta funds to Brown and Jamerica were "related to compensation (i.e. management fees), expense reimbursements and consideration for assets transferred into the Brawta funds." *Id*. at 1235. The court explained that after Brown submitted the interrogatory responses, he invoked his right against self-incrimination under the Fifth Amendment, and thereby prevented the

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, adopting the reports and recommendations of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

SEC from exploring his interrogatory answers in a deposition. The court observed that the quoted interrogatory response was "precisely the sort of general answer on a critical issue that would have been explored in great detail in a deposition." *Id*. The court concluded that allowing Brown to rely on the interrogatory response in resisting the motion for summary judgment "would allow him to manipulate the discovery process so that his unquestioned, conclusory assertions are the only version of his testimony in the record." *Id*.

The district court, *id*. at 1238, also adopted the recommendation of a magistrate judge that disgorgement with prejudgment interest was "appropriate to discourage future violations of securities laws and to make the investors whole." *Id*. at 1245. The court explained that Brown's "only objections" to the disgorgement order were addressed in other sections of the court's order, and that Brown's contention that the SEC had been inconsistent in its assessment of the total damages was not supported by citation to the record or any alternative proposal. *Id*. at 1238 & n.6. In July 2009, after further briefing, the court assessed "Tier III" civil penalties of $80,000 against Brown and $400,000 against Jamerica. *SEC v. Brown*, 643 F. Supp. 2d 1088 (D. Minn. 2009).

Counsel for defendants withdrew, and Brown appealed *pro se*. He argues that he was a victim of "selective prosecution," that the SEC refused to turn over "exculpatory documents," that the Brawta venture was "in no way a Ponzi scheme," that there is "no actual accounting proof of the amount of money" involved in the fraud alleged by the SEC, and that he was involved in no "illegal activities or deceptions." He asks this court "to overturn all judgments, fines, [and] decisions against [him]," and to order the SEC to reimburse him for the costs of mounting a defense.

Having carefully reviewed the record *de novo*, we conclude that summary judgment was appropriate for the reasons stated by the district court, and that

Brown's other challenges to the court's orders are without merit. In light of points raised by the dissenting opinion, we also observe that ample authority supports an order for disgorgement of funds together with injunctive relief, *e.g.*, *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998) (explaining that Congress added civil penalties in 1990 because "disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud"), and that "the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses." *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (internal quotation omitted). Accordingly, we affirm.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I agree with the court that we should affirm the district court's grant of summary judgment, its order permanently enjoining Brown and Jamerica from violating the laws cited in the SEC's complaint, and the award of Tier III civil penalties. But I respectfully dissent from the decision to affirm the order that Brown disgorge $869,633, the amount fraudulently misappropriated from Brawta investors, together with prejudgment interest.

1. It is well-settled that the grant of broad jurisdiction to remedy violations of the federal securities laws includes the power to order a defendant guilty of securities fraud "to disgorge any ill-gotten profits." SEC v. Ridenour, 913 F.2d 515, 517 (8th Cir. 1990). Disgorgement is an equitable remedy. Its purposes are to provide a remedy for fraud victims and to deprive the defendant of unjust enrichment, not to punish. SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989). A defendant's financial inability to repay is no defense to an order that he disgorge his ill-gotten gain. SEC v. Warren, 534 F.3d 1368, 1370 & n.2 (11th Cir. 2008); SEC v.

-4-

United Energy Partners, Inc., 88 F. App'x 744, 746 (5th Cir.), cert. denied, 543 U.S. 1034 (2004).

The federal securities laws protect investors and the integrity of the securities markets. For some violations, the defendant's ill-gotten gain equals the losses of identifiable victims. Courts of equity have a remedy for such wrongs -- restitution -- and it is consistent with Congress's grant of civil enforcement powers to the SEC that the agency be granted that remedy for the benefit of defrauded investors. Thus, in many cases, disgorgement orders have expressly provided that the amounts disgorged would be paid to defrauded investors. See SEC v. Walker, 1989 WL 168007, at *1 (8th Cir. 1989); SEC v. Blavin, 760 F.2d 706, 710 (6th Cir. 1985); SEC v. MacDonald, 699 F.2d 47, 52 (1st Cir. 1983) (en banc); SEC v. Manor Nursing Ctrs, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972).

For other securities law violations, such as insider trading, there may be no identifiable investor victim or measurable investor losses. In these cases, making the wrongdoer give up his ill-gotten gain protects the integrity of the securities markets by helping to deter similar violations. Again, courts of equity have such a remedy -- unjust enrichment -- and the SEC has frequently sought and obtained disgorgement orders despite the absence of identifiable defrauded investors. See, e.g., SEC v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987), cert. denied, 486 U.S. 1014, 1015 (1988); SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 102 (2d Cir. 1978). However, even when the remedy is intended to deter misconduct by members of the securities industry in general, it must be remedial, not punitive. See Beck v. SEC, 430 F.2d 673, 674-75 (6th Cir. 1970).

In this case, Brown did not fraudulently profit from securities transactions; he simply pocketed funds that he promised victims he would invest. The SEC proved that he fraudulently diverted $869,633 of the $1.62M that fifty-three identifiable victims invested in Brawta. *For these violations*, recovering victim losses was the

proper focus of an equitable monetary remedy. At the outset of the case, the district court took appropriate action toward that end, freezing defendants' assets and, when Brown filed for bankruptcy protection, appointing a receiver who aggressively -- and with considerable success -- sought remedies for the defrauded investors in the bankruptcy case. Then, with these remedies in place, the SEC asked for "disgorgement" of all wrongfully diverted funds. The SEC did not explain what *remedial* purpose would be served by this remedy. It did not disclose, much less propose an order clarifying, whether any monies disgorged would be paid to defrauded investors. Nor did it address whether imposing a massive monetary obligation on an obviously insolvent debtor would adversely affect the ongoing efforts of the receiver and the bankruptcy trustee to recover the victims' losses.

Equitable remedies should issue only upon a concrete showing of need and should impose the least drastic remedy necessary to achieve the desired goals. See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 386 (1970); Hecht Co. v. Bowles, 321 U.S. 321, 329-30 (1944). The district court's cursory examination of this issue simply stated the SEC "requests that defendants be disgorged of the $869,633 misappropriated from Brawta." 579 F. Supp. 2d at 1238. The court did not consider whether the permanent injunction, coupled with substantial civil penalties, were sufficient to deter future violations. See SEC v. Thomas James Assocs., Inc., 738 F. Supp. 88, 92-93 (W.D.N.Y. 1990). It did not consider whether amounts recovered by the receiver or expenses attributable to legitimate investment activities should offset the amount to be disgorged, as other cases have required to ensure that disgorgement is remedial and not punitive. See SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC, 289 F. App'x 183, 190 (9th Cir. 2008); SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1114 (9th Cir. 2006); United Energy Partners, 88 F. App'x at 747. Nor did it address whether this remedy would interfere with the victims' efforts to recover their losses. On this record, the only apparent rationale for the SEC's disgorgement request was punitive, not remedial. It was an abuse of discretion to grant that request, see Walker, 1989 WL 168007, at *2

-6-

(standard of review), particularly without holding an evidentiary hearing on these issues, see SEC v. Smyth, 420 F.3d 1225, 1232-33 (11th Cir. 2005). I would remand for further consideration of the disgorgement issue.

2. I will also explain my narrow reason for affirming the grant of summary judgment, because the court's summary affirmance fails to address a potentially recurring problem in the district court's disposition of the SEC's motion.

In April 2007, Brown submitted answers to SEC interrogatories. Ten days later, the United States Attorney notified defense counsel that Brown was the target of a criminal investigation. After the district court denied Brown a stay of the civil proceedings, he asserted his Fifth Amendment privilege against self-incrimination and refused to answer substantive questions when the SEC took his deposition in the civil case. In granting summary judgment, the court ruled that it would not consider Brown's interrogatory responses, the only evidence he submitted as non-moving party, "to prevent unfairness to the SEC" because his assertion of the privilege "prevented the SEC from exploring and clarifying [the interrogatory] responses in a deposition." SEC v. Brown, 579 F. Supp. 2d 1228, 1235 (D. Minn. 2008). I conclude the court abused its discretion when it denied a stay *and* excluded all evidence offered in opposition to the SEC's motion for summary judgment.

The Fifth Amendment permits an adverse inference when the privilege against self-incrimination is claimed by a party in a civil case. See Baxter v. Pamigiano, 425 U.S. 308, 320 (1976). A district court may also "monitor whether the assertion of a privilege causes unfair prejudice to the opposing litigant." FTC v. Kitco of Nev., Inc., 612 F. Supp. 1282, 1291 (D. Minn. 1985). But "the district court's discretion narrows as the severity of the sanction or remedy it elects increases." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). Precluding evidence is an extreme sanction that must be remedial, not punitive. "Because the privilege [against self-incrimination] is constitutionally based, the detriment to the party asserting it should

be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." SEC v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir. 1994).

When the government seeks civil remedies under statutes whose violations may be criminally prosecuted -- such as the federal securities laws -- courts should give "special consideration . . . to the plight of the party asserting the Fifth Amendment." Graystone Nash, 25 F.3d at 194. In an appropriate case, this may warrant, instead of a preclusion order, an order permitting the party to testify at the civil trial, as in Kitco, 612 F. Supp. at 1291; or barring use of the defendant's testimony in the civil case at any subsequent criminal proceeding, as in United States v. Parcels of Land, 903 F.2d 36, 44 (1st Cir. 1990); or staying the civil case until the defendant is indicted or the criminal statute of limitations expires, as in Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1089 (5th Cir. 1979). These are delicate and difficult issues, and district courts have substantial discretion to resolve them. But here, the district court did not even consider whether Brown's assertion of the privilege warranted a less severe remedy than an order effectively defaulting his opposition to the SEC's motion for summary judgment. Brown's interrogatory responses were submitted prior to his assertion of the privilege and months before the SEC moved for summary judgment. There was no unfair surprise and little if any prejudice. This was "a far cry from [a case] where invocation of the privilege prevented [a party] from obtaining the evidence it needed to prevail in the litigation." Graystone Nash, 25 F.3d at 193.

Although the district court abused its discretion in excluding Brown's interrogatory responses, I agree the grant of summary judgment must be affirmed because the error was harmless. See Fed. R. Civ. P. 61. In opposing the SEC's motion, Brown argued that summary judgment was inappropriate on the issue of scienter, an element of claims under §§ 17(a)(1), 10(b), 206(1), and Rule 10b-5 requiring proof of intent to defraud. Aaron v. SEC, 446 U.S. 680, 695, 697 (1980); SEC v. Steadman, 967 F.2d 636, 641 n.3 (D.C. Cir. 1992). But Brown's uncorroborated assertion that he was entitled to substantial fees and twenty-percent

of any asset appreciation, even if credited, did not come close to rebutting the SEC's evidence that *one-half* of investor funds were transferred out of Brawta's account, that large portions of the diverted funds were used for Brown's personal expenses, and that he attempted to conceal the diversions. On this record, as in SEC v. Lyttle, 538 F.3d 601, 604 (7th Cir. 2008), "no reasonable jury could doubt that [Brown] had acted with scienter."

————————————————