IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TRINA R. GUMBS,
    Plaintiff

    v.

STATE OF DELAWARE
DEPARTMENT OF LABOR,
    Defendant.

: 
: 
: 
:   C.A. No. S14C-10-015 RFS
: 
: 
: 
: 

## MEMORANDUM OPINION

Upon Defendant's Motion for Summary Judgment. Denied.

Date Submitted: October 12, 2017
Date Decided: January 26, 2018

Tasha Marie Stevens, Esq., Fuqua, Willard, Stevens & Schab, P.A., 26 The Circle, P.O. Box 250, Georgetown, Delaware 19947, Attorney for Plaintiff

Kenisha L. Ringgold, Esq. and Oliver J. Cleary, Esq., Deputy Attorneys General, 820 N. French Street, 6th Floor, Wilmington, Delaware 19801, Attorneys for Defendant

STOKES, J.

# I.    INTRODUCTION

This matter is presently before the Court on the motion of the Defendant, the Delaware Department of Labor ("Defendant" or "DOL"), for summary judgment. The Plaintiff, Trina R. Gumbs ("Plaintiff" or "Gumbs"), opposes the Motion. For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**.

# II.    FACTS

In 1996, Plaintiff began her employment with the Delaware Department of Labor Office of Anti-Discrimination ("OAD") as an Administrative Assistant to the Director of Industrial Affairs. Gumbs was promoted to the position of Labor Law Enforcement Officer I in 1997, to Law Enforcement Officer II in 1999, and to Labor Law Enforcement Supervisor in 2006. In December 2011, when the OAD administrator, Regulatory Specialist Julie Petroff ("Petroff"), left her position, Gumbs was temporarily promoted to Acting Regulatory Specialist. Her duties expanded in accordance with this promotion. She also received a commensurate increase in pay.

In March 2012, the DOL posted the Regulatory Specialist position. Two preferred qualifications were added to the position: (1) possession of a Juris Doctor degree and (2) experience in employment and/or discrimination claim resolution. Acting OAD Director, Bob Strong ("Strong"), was the hiring manager for the position. Strong reported to Secretary of Labor John McMahon ("McMahon").

Plaintiff applied for the Regulatory Specialist position. All of the qualified candidates, including Gumbs, were interviewed by a panel. The interview panel consisted of two women and one man. The panel asked each interviewee the same standard questions. Neither Strong nor McMahon were present for Gumbs' interview. Strong was present for a second interview with the individual who was ultimately chosen for the position. Daniel McGannon ("McGannon") was

2

eventually offered, and accepted, the position. McGannon graduated from Widener Law School in 2010 and worked for Saltz Polisher, P.C. in employment discrimination for nearly one year.

After McGannon accepted the position, Plaintiff was informed she had not been chosen for the job. She was also asked to assist McGannon, as he had relatively little work experience. At this point, Gumbs began to suspect she had not been selected for the position due to her gender and age. She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging gender and age discrimination as well as Equal Pay Act violations. This was the first complaint of this nature Gumbs had filed, either with the EEOC or the DOL. Petroff, who had formerly held the Regulatory Specialist position, submitted an affidavit and email to the EEOC in support of Plaintiff's complaint. At this time, Petroff had only been provided information about the situation by Gumbs. Petroff later returned to the OAD as Division Director. As a result, she learned additional information about the allegations. Her assessment of Gumbs' claim changed. Petroff now asserts that Gumbs was a "difficult employee" and that Strong and McMahon have never demonstrated any anti-female animus. In short, she does not believe that gender discrimination motivated the DOL's decision to hire McGannon.

In October 2015, Plaintiff left the DOL to work for the Kent County Family Court. Because her employment with the State continued, Gumbs retained her State email account. On November 10, 2015, the State served a Request for Production on Gumbs in her Federal Equal Pay Act claim. As part of her production, Gumbs included Charge Detail Reports. The Reports contain private information of individuals filing discrimination complaints with the OAD. The EEOC demanded that the confidential documents be destroyed. Gumbs complied. At Gumbs' deposition the DOL questioned her about this situation, but Gumbs invoked her Fifth Amendment right against self-

3

incrimination. Defendants argue that Plaintiff's uncooperativeness has prejudiced its ability to ascertain facts necessary to assert defenses against Plaintiff's complaint.

## III.    TITLE VII STANDARD

Title VII of Chapter 42 of the United States Code reads, in pertinent part, "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[1] To assess a claim under Title VII, the Court must apply the *McDonnell Douglas* burden shifting procedure.[2] According to *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case of unlawful discrimination in the workplace.[3] To establish a *prima facie* case, the plaintiff must show: (1) she belongs to a protected category; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) this action occurred under circumstances that give rise to an interference of unlawful discrimination.[4] In *Wagonhoffer v. Visionquest National Ltd.,* the Delaware Superior Court noted that the Plaintiff has only a minimal burden when establishing her *prima facie* case.[5] This requirement is not meant to be "'onerous'—[the plaintiff] need only present 'sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected….'"[6]

Once the *prima facie* case is established, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection."[7] The defendant must only

---

[1] 42 U.S.C.A. § 2000e-2(1).
[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[3] *Id.* at 802.
[4] *Jones v. Sch. Dist. Of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999) (internal citations omitted).
[5] *Wagonhoffer v. Visionquest National Ltd.,* 2016 WL 3947952, at * 6 (Del. Super. Ct. July 18, 2016).
[6] *Id.* at *4 (internal citations omitted).
[7] *Jones,* 198 F.3d at 410 (internal citations omitted).

produce a reason for the adverse action; proof that the articulated reason was the cause of the adverse treatment is not required.[8]

Assuming the defendant met its burden of production, the burden shifts back to the plaintiff to prove by a preponderance of evidence that defendant's reasons "were not its true reasons, but were a pretext for discrimination."[9] Only after all of these burdens have been met, can a Title VII violation be found.

## IV. PARTIES' CONTENTIONS

On August 3, 2017, the DOL filed this Motion for Summary Judgment. Defendant makes several arguments in support of its Motion. First, the DOL asserts that Gumbs cannot carry the initial burden of establishing a *prima facie* case of unlawful discrimination because she cannot show she was passed over for the position due to gender discrimination. According to the DOL, the interview team ultimately selected McGannon because he possessed a higher level of academic achievement, *i.e.*, a juris doctor degree, and a more varied professional background. Defendant wrote, "there is no evidence that DOL conducted the interview process in a manner that would give an inference of discriminatory practice."[10] The DOL claims that Gumbs has not presented any evidence to the contrary.

Furthermore, Defendant argues that it has produced a legitimate business reason for selecting McGannon over Gumbs. For the DOL to overcome its burden under *McDonnell Douglas*, it must only articulate a legitimate, non-discriminatory reason for the adverse hiring. In Defendant's view, "DOL's burden is satisfied because the evidence, *i.e.*, the DOL's job Regulatory Specialist posting, candidate's qualification records, interview team notes, and the interview team's recommendation

---

[8] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 512 (1993).
[9] *Jones*, 198 F.3d at 410 (internal citations omitted).
[10] Def.'s Opening Br. Supp. Mot. Summ. J. 27.

5

lead to the natural conclusion that there was a nondiscriminatory reason for the employment decision."[11] The DOL further explains the interview team's decision to recommend McGannon for hire by stating, "Mr. McGannon's private sector experience, education, three-year experience in research, experience in policy administration, quasi-judicial proceedings, experience in narrative writing, possession of a juris doctor and answers provided during the interview, caused the interview team to select him over all the other candidates."[12] According to Defendant, Gumbs simply did not possess all of these qualities, notably a juris doctor degree, and she did not interview as well as McGannon. Additionally, Defendant highlighted that the interview team's second choice for the position was a woman, which, in the DOL's view, undercuts Gumbs' discrimination claim even further.

Defendant further asserts that Gumbs is unable to establish that the reason given by the DOL for McGannon's hire is pretext. She has not demonstrated any weaknesses, implausibilities, inconsistencies, or contradictions in the DOL's reasoning. Therefore, according to Defendant, Gumbs cannot recover for a Title VII gender discrimination claim.

Finally, Defendant argues that Gumbs' invocation of her Fifth Amendment privilege against self-incrimination unduly prejudices the DOL's ability to ascertain facts necessary to assert defenses against her allegations. The DOL asserts that Gumbs may not invoke her Fifth Amendment right becasue she instituted the suit, and is now using this right to prevent the defending party from learning information necessary to its defense. The DOL further explains that it "has the right to ascertain when the documents were stolen, to whom the information was disseminated, and if the documents were stolen while Plaintiff was a DOL employee."[13] As the

---

[11] *Id.*
[12] *Id.* at 30.
[13] *Id.* at 34-35.

6

final part of this argument, Defendant claims that under the equitable doctrine of unclean hands Gumbs' suit should be dismissed.

Conversely, Gumbs argues that summary judgment should be denied, as there are disputed issues of material fact that give rise to an inference of unlawful gender discrimination. Her chief complaints are that (1) McGannon was not qualified and (2) the OAD declined to hire another qualified female that possessed both of the newly added preferred qualifications.

According to Gumbs, McGannon was not qualified for the Regulatory Specialist position. Underlying this argument is her belief that she was more qualified for the position, which, in Gumbs' view, calls the DOL's decision into question. One of the job requirements was "experience in policy administration which includes planning, developing, implementing and evaluating policies and procedures."[14] Nothing in McGannon's application materials or from his interview indicates that he had experience planning, developing, or implementing policies and procedures, only that he had previously evaluated policies and procedures. Gumbs asserts that the use of "and" in the requirement shows that a qualified applicant would possess experience in all four areas of policy work. Thus, in Plaintiff's view, McGannon did not meet this requirement.

Moreover, Plaintiff asserts that the DOL's discriminatory action is also evidenced by its decision not to hire another female who possessed both preferred qualifications. One applicant, Elvira Berry ("Berry"), met both of the newly added preferred qualifications. However, McGannon was hired over Berry. Thus, Gumbs believes that the interview was the determining factor. She cites law supporting the proposition that subjective promotion criteria are often used to disguise unlawful discrimination, and claims that was the case here. Therefore, Gumbs believes that the jury could infer gender discrimination.

---

[14] Pl.'s Answering Br. Opp'n Def.'s Mot. Summ. J. 13.

7

Finally, Gumbs relies upon her accounts of Strong and McMahon's condescending and disrespectful behavior toward women to show that they both had negative feelings toward women. Gumbs states that McMahon frequently referred to the all-female staff at OAD as "you girls" or "young ladies." She also claims that Strong was known to feel that women often "bitched and complained" and, on one occasion, called a woman a "bitch." Petroff also mentioned in her email to the EEOC that Strong had pressured her not to hire a female for an open position, referring to the candidate as "that girl."[15]

Gumbs links her above claims to the fact that Defendant has denied that McMahon or Strong were directly involved in the interview process, which contrasts Gumbs' allegation that one of the members of the interview panel told her that Strong would be making the ultimate decision. Thus, she argues that the DOL has attempted to cover up the involvement of either McMahon or Strong in the interview process in order to appear not to have been influenced by anti-female opinions. Plaintiff makes no distinction between involvement in the interview process and being the ultimate decision maker.

In addition, Plaintiff argues that she has presented sufficient facts to convince a jury that the reasons the DOL gave for McGannon's hire were mere pretext. She first asserts that Defendant's explanation that the interview team found McGannon to be the most qualified candidate due to his academic and professional background is pretext because the DOL relied on the statements of Jeremy Fixler ("Fixler"), the current Human Resources Manager, to make this claim. Fixler was hired by the DOL in 2016, more than four years after McGannon's hire and only a few months before he left the DOL. Therefore, Gumbs takes issue with Fixler's account of the hiring process, given that he was not employed by Defendant at that time. She also points out

---

[15] Petroff has since claimed that her position on this issue has changed, and that she does not feel gender discrimination caused Defendant to hire McGannon. Gumbs attributes this change to Petroff's return to OAD.

8

contradictions in Fixler's statement and McGannon's deposition. The primary contradiction is that the Fixler statement claims McGannon had experience in all areas of policy administration, whereas McGannon stated in his deposition that he could not remember developing, planning, or implementing policies.

Gumbs also argues that Defendant has given different reasons for McGannon's hire in this case than it did in its position paper to the EEOC for Gumb's claim or Berry's claim. The DOL alleged in the Gumbs position paper that McGannon was chosen because he had a juris doctor degree. In the Berry position paper Defendant alleged that the interview team believed that "McGannon's responses to their questions and his overall performance during the interview supported the recommendation."[16] Here, Defendant has mentioned McGannon's favorable professional background for the first time. According to Gumbs, these inconsistencies should be sufficient to lead a reasonable factfinder to disbelieve Defendant's proffered reasons for McGannon's hire.

Gumbs final argument regards her Fifth Amendment protection against self-incrimination with respect to the confidential Charge Detail Inquiries. She claims to have been privy to various types of confidential information during her time at the OAD, far more than just the Charge Detail Inquiries. Gumbs also claims that any confidential information was disclosed in an effort to fully respond to Defendant's Request for Production and that the information was only provided to defense counsel, not publically disseminated. Moreover, Gumbs argues she did not possess any malicious intent. In Gumbs' view, Defendant is not prejudiced by her unwillingness to divulge further information on this matter, especially since the DOL has not explained how additional

---

[16] *Id.* at 19.

information would benefit its defense of her discrimination claim. Therefore, Plaintiff feels she should not be compelled to testify in light of her Fifth Amendment right.

## V. STANDARD OF REVIEW

*A. Summary Judgment Standard*

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[17] The moving party bears the initial burden of showing no material issues of fact are present.[18] If the moving party properly supports their motion, the burden then shifts to the non-moving party to rebut the contention that no material issues of fact exist.[19] In considering a motion for summary judgment, the Court must review the record in a light most favorable to the non-moving party.[20] The Delaware Supreme Court illustrates the parameters of granting summary judgment as follows:

> Under no circumstances, however, will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute. Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances.[21]

## VI. ANALYSIS

Plaintiff easily establishes the first three elements of her *prima facie* case. First, as a female, she belongs to a protected category of people. Second, the DOL was seeking applications for the regulatory specialist position for which Gumbs applied and was qualified. That Gumbs was

---

[17] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[18] *Id.* at 681.
[19] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).
[20] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[21] *Id.* at 468.

10

qualified for this position is evidenced by the fact that she met with the interview panel, as only qualified applicants were interviewed. Lastly, it is not disputed that Plaintiff was rejected and the job was given to McGannon instead. However, the parties dispute whether the fourth element of the *prima facie* case is satisfied, that this action occurred under circumstances giving rise to an interference of unlawful discrimination.

The Court must examine the hiring process and the circumstances surrounding Plaintiff's eventual denial to determine whether unlawful gender discrimination influenced the DOL's decision. The Court notes that its responsibility is not to question the wisdom of the DOL's hiring choices, but to ensure that no discriminatory animus existed. Nothing about the interview process was inappropriate. The interview panel consisted of two women and one man. Each candidate was asked the same five standard questions. Additionally, neither Strong nor McMahon were involved in the initial interviews. The fact that Strong met with McGannon in a second interview does not challenge the legitimacy of the initial process. That meeting was simply another step in the process.

However, the Court is concerned about the alleged comments made by both Strong and McMahon that, if indeed spoken, demonstrate a bias against women. According to Gumbs, McMahon was known to refer to the all-female staff at OAD as "young ladies," which can be construed as condescending and discriminatory. Also, according to Gumbs, Strong was known to feel that women frequently "bitch and complain," and, on at least one occasion, referred to a woman as a "bitch." These comments are unacceptable, especially when spoken in the workplace. The existence of such a work environment would support Gumbs' assertion that gender discrimination influenced the DOL's hiring process. Thus, in viewing the facts presented in the

11

light most favorable to the Plaintiff, there are still issues of material fact in dispute with regard to Gumbs' *prima facie* case.

The DOL produced a reason for its decision to hire McGannon over Gumbs, namely that McGannon was more qualified for the position than Plaintiff. However, Gumbs argues that this reason is merely pretext.

Gumbs' chief argument focuses on the inconsistencies found in the position papers submitted to the EEOC for Gumbs and Berry's discrimination claims. She believes that the inconsistences undermine the DOL's credibility in claiming non-discriminatory motivations for hiring McGannon. The Gumbs position paper claimed that McGannon was chosen for the position because he possessed a juris doctor degree. The Berry position paper stated that McGannon was offered the position because he was a stronger interviewee with better qualifications. In the Court's view these inconsistencies are understandable. There was no nefarious intent behind the fact that slightly varied reasoning was given for McGannon's hiring. The main point remains the same: in the eyes of the DOL, McGannon was the more qualified candidate.

However, the Court does not find the inconsistencies in Petroff's email regarding the EEOC claim and her later statements about the lack of discrimination at the OAD to be so harmless. If believed, her email to the EEOC seriously calls into question the DOL's non-discriminatory reasons for hiring McGannon. In her April 1, 2014 letter to an EEOC representative, Petroff alleged various shortcomings pertaining to Strong and McMahon's leadership and represented that she believed the OAD had violated civil rights laws.[22] She also stated that Gumbs was a well-respected member of the EEOC community and that she was qualified to serve as Regulatory Specialist.[23] At her June 22, 2017 deposition, Petroff maintained that she did not always see eye

---

[22] App. Def.'s Opening Br. Supp. Mot. Summ. J. A181-82.
[23] *Id.*

12

to eye with Strong and McMahon and that she disagreed with some of the ways the OAD was run under McMahon's leadership.[24] However, she appeared to back off of her previous position stated in the email that civil rights laws had been violated when McGannon was chosen over Gumbs. Petroff stated that while at the OAD she neither received any complaints regarding Strong or McMahon from females nor heard either man make statements that would have shown animus against women.[25] When asked whether there was any gender discrimination in the organization, Petroff responded that she could not recall any discrimination against women.[26]

Thus, the credibility of Petroff's email to the EEOC is called into question. Such questions of credibility are left to the jury.[27] If the jury chose to believe the contents of Petroff's email, it could show that the DOL's proffered non-discriminatory explanation is merely pretext. In short, these contradictions create genuine issues of material fact as to whether the proffered justification for McGannon's hire is only pretext. Therefore, summary judgment is not appropriate.

Finally, the Court would like to address the Fifth Amendment self-incrimination issue. First of all, Plaintiff cannot use her Fifth Amendment protection as both a sword and a shield.[28] Since she has alleged gender discrimination and brought this suit against Defendant, Plaintiff cannot now impede the DOL's ability to develop its defense. Therefore, Gumbs must provide complete information to Defendant. Furthermore, in this context, Gumbs' privilege against self-incrimination concerns the equitable remedy of reinstatement. Considering that as Regulatory Specialist Plaintiff was placed in a position of confidence and trust, it would be imprudent to allow

---

[24] *Id.* at A13, A19.
[25] *Id.* at A15, A19.
[26] *Id.* at A15.
[27] *McFadden v. Delaware Racing Ass'n*, 2007 WL 2677132, at *3 (Del. Super. Ct. Sept. 3, 2007).
[28] *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3rd Cir. 1994)("In a civil trial, a party's invocation of the privilege may be proper, but it does not take place in a vacuum; the rights of the other litigant are entitled to consideration as well."); *Gutierrez-Rodriguez v. Cartagena*, 822 F.2d 553, 577 (1st Cir. 1989)("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial.").

13

her to return this position with the misuse of the confidential information. After knowingly committing a wrongful act, it is inappropriate for Gumbs to be again placed in a position with such a degree of authority. In this posture, Gumbs will not be permitted to seek the equitable remedy of reinstatement.

## VII. CONCLUSION

Given that issues of material fact remain, Summary judgment is inappropriate. Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**